## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KATHERINE EVANS AND
AMICA CENTER FOR
IMMIGRANT RIGHTS,

**Plaintiffs,**

v.

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT,

**Defendants.**

Case No: 25-CV-321

COMPLAINT

## <u>INTRODUCTION</u>

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of records concerning the use of an electronic post order custody review ("ePOCR") system by United States Immigration and Customs Enforcement ("ICE") to make and review decisions about detention of immigrants who are subject to an administratively final removal order—including those who have won protection from removal to their country of origin—as a part of ICE's Enforcement Removal Operations ("ERO"). Plaintiffs Katherine Evans and Amica Center For Immigrant Rights ("Amica Center") (together the "Plaintiffs") seek injunctive and other appropriate relief to compel the production of agency records improperly withheld from them by ICE.

2.      To facilitate the public's understanding of ICE's activities surrounding ePOCR and ePOCR's impact on the detention and removal of non-citizens, Plaintiffs

sought, *inter alia*, records concerning the development, implementation, and policies surrounding ePOCR.

3.        ICE's failure to timely turn over any of the requested records pursuant to statutory mandate, or even indicate that they have made the required initial statutory determination on Plaintiffs' requests, necessitates declaratory and injunctive relief under FOIA, 5 U.S.C. § 552, for Defendant's failure to comply with statutory deadlines, failure to conduct an appropriate search, and failure to produce responsive documents. Plaintiffs are entitled to an order requiring Defendant to release unlawfully withheld records.

## PARTIES

4.        Plaintiff Katherine Evans is a citizen and resident of North Carolina. She is a Clinical Professor of Law at Duke University School of Law, where she directs Duke Law's Immigrant Rights Clinic. She has requested records under FOIA from the Defendant.

5.        Plaintiff Amica Center is a  non-profit, non-partisan corporation under Internal Revenue Code § 501(c)(3).  Plaintiff is based in Washington, D.C., but has employees working and living in North Carolina and assisting clients in North Carolina and throughout the East and Southeast. It has requested records under FOIA from the Defendant.

6.        Defendant United States Immigration and Customs Enforcement ("ICE") is an agency of the U.S. government within the meaning of 5 U.S.C. §§ 551, 552(f) and 702. ICE is charged with enforcement of the immigration laws.  Among ICE's primary duties

2

are the investigations of persons suspected to have violated the immigration laws and the apprehension, detention, and removal of noncitizens who are unlawfully present in the United States. ICE is charged with the duty to provide public access to records in its possession consistent with the requirements of FOIA. ICE has possession and control over the records sought by Plaintiffs.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper under 5 U.S.C. §§ 552(a)(4)(B), (6)(C)(i), and 28 U.S.C. § 1331.

8.      Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.§ 1391(e), because Plaintiff Katherine Evans resides and works in the Middle District of North Carolina.

## FACTS

9.      Congress passed the Freedom of Information Act, 5 U.S.C. § 552, in 1966 "to establish a general philosophy of full agency disclosure," S. Rep. No. 89–813, at 3 (1965), and "to assure the availability of Government information necessary to an informed electorate," H.R. Rep. No. 89–1497, at 12 (1966), 1966 U.S.C.C.A.N. 2418, 2429.

10.      The statute provides that, subject to certain enumerated exemptions for classified documents, agency personnel and medical files, confidential financial information, and the like, 5 U.S.C. § 552(b)(1)-(9) federal agencies generally must make their internal records available to the public upon request. *Id.* § 552(a)(3)(A).

11.      As the Supreme Court has recognized, FOIA's disclosure regime shines a light on government operations "to check against corruption and to hold the governors

3

accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

12.     ICE ERO uses the ePOCR system to make and review decisions about the detention and removal of non-citizens who are subject to an administrative final removal order, including non-citizens who will, practically speaking, not be deported because they have been granted protection from removal by an Immigration Judge in the form of withholding of removal or protection under the Convention Against Torture.

13.     The Post Order Custody Review process is generally governed by the Supreme Court's decision in *Zavydas v. Davis,* 533 U.S. 678 (2001), and the regulations found at 8 C.F.R. §§ 241.1 *et seq.* The Post Order Custody Review process is, in theory, designed to avoid the indefinite detention of non-citizens, which the *Zadvydas* Court noted would pose "serious constitutional concerns." 533 U.S. at 682.

14.     According to the United States Department of Homeland Security ("DHS"), in fiscal year 2021, "ERO Removal continued the development and expanded the pilot program for the ePOCR module to encompass twelve (12) ERO field offices."[1]

15.     "This undertaking provided ERO with an efficient, centralized, and uniform process that ensured timely custody decisions were conducted in accordance with applicable laws, regulations, and court orders." *Id.*

16.     Beyond the two (2) above paragraphs, almost no information is publicly available regarding the novel ePOCR system and how it ensures that custody decisions

---

[1] DHS, "FY2023 Budget in Brief," p. 35, https://www.dhs.gov/sites/default/files/2022-03/22-%201835%20-%20FY%202023%20Budget%20in%20Brief%20FINAL%20with%20Cover_Remediated.pdf.

US2008 30724702 5

made within ePOCR are "in accordance with applicable laws, regulations, and court orders."

**Plaintiffs Submit Their FOIA Request.**

17.     On or about August 2, 2024,  Plaintiffs submitted a FOIA request, reference number 2024-ICFO-49717, seeking information on ePOCR ("First FOIA Request") through DHS's electronic FOIA submission portal.

18.     The First FOIA Request complied with ICE's FOIA requirements and was detailed in its description of records sought. It requested records relating to communications, including but not limited to, letters, memos, emails, text messages, and other electronic messages, sent or received since January 1, 2020, that contain any of the following terms or phrases:

        a)  "ePOCR",

        b)  "electronic post order custody review",

        c)  "post order custody review module", or

        d)  "post order custody review system".

19.     The First FOIA Request also sought records pertaining to the development and implementation of the ePOCR system, including:

- All records prepared, received, transmitted, collected, and/or maintained by DHS sufficient to show the development of the ePOCR computer system;

- All final reports, recommendations, or memoranda produced by DHS on or after January 1, 2020, relating to problems with the use of and

5

contemplated replacement of the "Transfer Checklist" in the post order custody review process;

- All records sufficient to show the business rules, criteria, protocols, scoring, "structured fields" or "list of values" governing or incorporated into, or planned to be incorporated into or govern, any automated review process, decision structure, or other decisional matrix of any past, present, or future version of ePOCR;

- All records sufficient to show the use of decisions by the Board of Immigration Appeals (BIA), U.S. Courts of Appeals, and the Supreme Court within ePOCR;

- All records sufficient to show the use of federal statutes and regulations within ePOCR;

- All records sufficient to show the manner and frequency in which ePOCR is updated to reflect changes in the law, regulations, or court orders;

- All records sufficient to show the contemplated and purported uses for ePOCR, including, but not limited to, any plans to add features to or expand the uses of ePOCR;

- All records sufficient to show the use of ePOCR to facilitate removal of noncitizens from the United States;

- All records sufficient to show any and all factors ePOCR utilizes in making determinations about a non-citizen's detention, including but not

US2008 30724702 5

limited to flight risk, danger, or significant likelihood of removal in the reasonably foreseeable future, and the basis for how ePOCR scores, analyzes, or otherwise evaluates those factors within ePOCR's determination process;

- All records sufficient to show any risk assessments utilized by or generated within ePOCR and the basis for how ePOCR scores, analyzes, or otherwise creates each risk assessment including business rules, criteria, protocols, scoring, structured fields or list of values used to assess risk to public safety or risk of flight;

- All records sufficient to show the interaction of ePOCR and the Risk Classification Assessment (RCA) system, including any of the RCA components such as the special vulnerabilities, mandatory detention, risk of flight, risk to public safety, and/or the custody classification modules, scores, and risk levels;

- All records sufficient to show consideration of the use of any alternative systems to ePOCR for the review and determination of custody decisions for immigrants subject to administratively final removal orders;

- All records sufficient to show all databases and major information systems ePOCR may access or interface with;

- All records sufficient to show the need or justification for the development and implementation of ePOCR;

US2008 30724702 5

- All records reflecting any information released to the public or other media disclosures regarding the need for and development of ePOCR;

- All records sufficient to show any statement of work and/or contract documents for any private/non-governmental entity that has received or will receive funds for the development of the ePOCR system;

- All records sufficient to show the specifications provided to information technology contractors or similar parties to contracts regarding the "requirements definition," "design," and "development" of any past, present, or a future version of ePOCR, or any substantially similar software or computer system intended to perform the same function as ePOCR; and

- All final policy memoranda, standard operating procedures, and/or other similar records used to establish final agency policy or guidance in effect since January 1, 2020 relating to: decisions to continue or otherwise further development of the ePOCR, or electronic post order custody review, module; and decisions to expand access to and use of the ePOCR system by Enforcement and Removal Operations offices or employees.

20.     Plaintiffs' First FOIA Request also sought records addressing the implementation of the ePOCR system and sought "user guide," "quick-reference guide," "handbook," and all other records sufficient to show the proper use and function of ePOCR that DHS has developed for officers, employees, or contractors using ePOCR.

21.     The First FOIA Request further sought:

US2008 30724702 5

- All processing manuals, policies, procedures, guidelines, guidance, memoranda, instructions, training materials, Virtual University materials, and other similar records relating to DHS's implementation, deployment, and use of ePOCR by DHS officers, employees, or contractors;

- All records of summaries, support requests, help desk tickets, reports, or similar records discussing or regarding errors or incidents occurring within ePOCR since implementation and use of ePOCR began;

- All records sufficient to show any "data dictionary" that DHS has developed for ePOCR;

- All records sufficient to show any "sitemap" for ePOCR;

- All records sufficient to show any artificial intelligence, machine learning, or other systemic computer system learning incorporated or contemplated as part of any past, present, or future version of ePOCR;

- All records sufficient to show the process by which automated or algorithmic custody recommendations are made within ePOCR;

- All records sufficient to show the ePOCR system's algorithmic or automated process for making post order custody recommendations;

- Screenshots of all pages in the ePOCR system through which DHS officers, employees, or contractors may enter data, including, but not limited to, the "Preparation Page";

US2008 30724702 5

- Screenshots of all pages in the ePOCR system that displays data gathered from any other database or information repository, including, but not limited to, the "Immigration History" page;

- All records sufficient to show user requirements necessary to use ePOCR;

- All records sufficient to show the development of the Privacy Impact Assessment(s) ("PIA") for ePOCR; and

- All records discussing or documenting the efficiency or effectiveness of the ePOCR system since its implementation.

22.     A true and accurate copy of the First FOIA Request is attached and incorporated by reference as **EXHIBIT A**.

23.     On or about August 8, 2024, ICE responded to Plaintiffs by stating that their FOIA request was overly broad and invited revisions to the First FOIA Request. Essentially, ICE took issue with the word "all" while ignoring the detailed description of records sought.

24.     Plaintiffs disputed that their detailed First FOIA Request was too broad and vague, but nevertheless revised their FOIA request in an effort to work with the agency in the hopes of facilitating disclosure of the requested records.

**Plaintiffs Resubmit Their FOIA Request.**

25.     On or about September 4, 2024, Plaintiffs responded to ICE and submitted a revised FOIA request ("Second FOIA Request"). Plaintiffs' Second FOIA Request stated in great detail that Plaintiffs sought all records, including final reports; recommendations; memoranda; letters; emails; including attachments to emails, text messages or other

electronic messages; audiotapes, videotapes; and photographs, as well as letters; facsimiles; telephone messages; voice mail messages; and transcripts; notes; audio or video recordings; or minutes or notes of any meetings, telephone conversations, or discussions created on or after September 11, 2018, prepared, received, transmitted, collected, and/or maintained by DHS sufficient to show:

- the development of the ePOCR system;

- problems with the use of and contemplated replacement of the "Transfer Checklist" in the post order custody review process;

- the business rules, criteria, protocols, scoring, "structured fields" or "list of values" governing or incorporated into, or planned to be incorporated into or govern, any automated review process, decision structure, or other decisional matrix of any past, present, or future version of ePOCR;

- the use of decisions by the Board of Immigration Appeals (BIA), U.S. Courts of Appeals, and the Supreme Court within ePOCR;

- the use of federal statutes and regulations within ePOCR;

- the manner and frequency in which ePOCR is updated to reflect changes in the law, regulations, or court orders;

- the use of ePOCR to facilitate removal of non-citizens from the United States;

- information released to the public or other media disclosures regarding the need for and development of ePOCR;

US2008 30724702 5

- the need or justification for the development and implementation of ePOCR;

- information released to the public or other media disclosures regarding the need for and development of ePOCR;

- records sufficient to show all databases and major information systems ePOCR may access or interface with;

- any statement of work and/or contract documents for any private/non-governmental entity that has received or will receive funds for the development of the ePOCR system;

- the specifications provided to information technology contractors or similar parties to contracts regarding the "requirements definition," "design," and "development" of any past, present, or future version of ePOCR, or any substantially similar software or computer system intended to perform the same function as ePOCR;

- final agency policy or guidance in effect as well as user guides, handbooks, training or education materials on the proper use and function of ePOCR that DHS has developed for officers, employees, or contractors using ePOCR;

- any artificial intelligence, machine learning, or other systemic computer system learning incorporated or contemplated as part of any past, present, or future version of ePOCR;

US2008 30724702 5

- the process by which automated or algorithmic custody recommendations are made within ePOCR and the ePOCR system's algorithmic or automated process for making post order custody recommendations; and

- other records relating to ePOCR.

26. A true and accurate copy of the Second FOIA Request is attached and incorporated by reference as **EXHIBIT B**.

27. On or about September 6, 2024, ICE responded to Plaintiffs' revised request and reiterated their initial comment that in ICE's view, the Second FOIA Request was too broad and burdensome on the agency.

**Plaintiffs Submit Their FOIA Request for a Third Time.**

28. While Plaintiffs continued to dispute that their initial request was overly broad or burdensome, Plaintiffs further refined, narrowed, separated, and clarified aspects of the request to aid the agency in searching for and producing responsive records.

29. On or about October 9, 2024, Plaintiffs split their first request into three (3) separate FOIA requests ("Final FOIA Requests"), to comply with the hurdles ICE was imposing before turning over responsive documents. In one of the Final FOIA Requests, Plaintiffs sought records pertaining to communications regarding the ePOCR system; another sought records regarding the development of the ePOCR system; and a third requested records regarding the implementation of ePOCR.

30. As noted in the Department of Justice's FOIA guidance: "The sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that

request on the ground that it does not 'reasonably describe' records within the meaning of 5 U.S.C. § 552(a)(3)(A)."

31.     That provision in the FOIA was intended to ensure that a FOIA request description "be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." H.R. Rep. No. 93-876, 93d Cong., 2d Sess. 6 (1974). *See also* S. Rep. No. 93-854, 93d Cong., 2d Sess. 10 (1974) ("[T]he identification standard should not be used to obstruct public access to agency records."); *Bristol-Meyers Co. v. FTC*, 424 F.2d 935, 938 (D.C. Cir.), *cert. denied*, 400 U.S. 824 (1970).

32.     The Plaintiffs' Final FOIA Requests sought records pertaining to communications relating to ePOCR, including but not limited to, letters, memos, emails, text messages, and other electronic messages, and attachments, sent or received since October 1, 2021, to September 1, 2022, containing:

    1.    "ePOCR;"

    2.    "electronic post order custody review;"

    3.    "post order custody review module;"

    4.    "post order custody review system;"

    5.    remov* AND (detain OR detention) AND (checklist OR analy*); or

    6.    ("transfer checklist" OR "transfer analy*") w/5 (system OR module).

33.     A true and accurate copy of the Final FOIA Requests are attached and incorporated by reference as **EXHIBIT C**.

34.     On or about October 18, 2024, ICE acknowledged receipt of each of Plaintiffs' Final FOIA Requests and assigned a reference number of 2025-ICFO-01487, 2025-ICFO-01488, and 2025-ICFO-01489, respectively. With respect to requests 01487 (development of ePOCR) and 01489 (implementation of ePOCR), ICE indicated it had begun searching for records.

35.     With respect to request 01488 (communications regarding ePOCR), on October 18, 2024, ICE further sought that Plaintiffs revise their FOIA request to limit their request to a timeframe of six (6) to twelve (12) months and provide the names of ICE employees/positions whose communications would be searched. ICE further requested that Plaintiffs "provide specific terms other thank [*sic*] what you have already provided."

36.     On October 29, 2024, Plaintiffs responded by continuing to dispute ICE's stance that the request was overly broad and burdensome.  However, in the interest of expediting the disclosure of records, Plaintiffs limited the search to a 12-month period and submitted additional search terms that included: remov* AND (detain OR detention) AND (checklist OR analy*) and ("transfer checklist" OR "transfer analy*") w/5 (system OR module), along with a list of custodians to search. ICE indicated on October 30, 2024, that it had begun searching for records.

37.     With respect to each of the Final FOIA Requests, ICE granted a fee waiver, denied expedited treatment, and indicated that it had queried the appropriate offices for records related to the request.

38.     Under FOIA, an agency is required to make an initial "determination" on a request within twenty business days of its receipt. *See* 5 U.S.C. § 552(a)(6)(A)(i); *see also*

US2008 30724702 5

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182

(D.C. Cir. 2013) ("CREW"). While an agency is not required to produce documents within

this 20-day period, *at a minimum* "the agency must at least indicate within the relevant

time period, the scope of the documents it will produce and the exemptions it will claim . .

. ." *CREW*, 711 F.3d at 182-83. "It is not enough that, within the relevant time period, the

agency simply decides to later decide. . . After all, how could the agency articulate reasons

for non-compliance when it had not yet decided whether to comply (that is, whether to

produce all of the requested documents)?" *Id*. at 186.

39.     If there are "unusual circumstances," as defined by statute, an agency may

extend the time to make its determination by no more than ten working days. *See* 5 U.S.C.

§ 552(a)(6)(B)(i).

40.     ICE invoked the "unusual circumstances" extension with respect to each of

the Final FOIA Requests.

41.     The statute also permits the agency to toll the time to respond the request

once to seek additional information or clarification from a requestor. *See* 5 U.S.C. §

552(a)(6)(A)(ii). Receipt of the requestor's response ends the tolling period. *Id*.

42.     With respect to the communications request, ICE tolled the period on

October 18, 2024, seeking clarification. Plaintiffs ended the tolling period as to this request

on October 29, 2024, when they submitted their response to ICE's request for clarification.

43.     More than 30 working days have passed since Plaintiffs filed their Final

FOIA Requests and responded to ICE's requests for clarification.  The statutory time period

for ICE to make a determination and respond to the Final FOIA requests has elapsed.

US2008 30724702 5

44. Defendant has not provided the scope of the documents searched nor the exemptions they intend to claim with respect to any of Plaintiffs' three requests.

45. Under FOIA, a requestor is deemed to have exhausted her administrative remedies if the agency fails to comply with the applicable time limit provisions set forth in the statute. 5 U.S.C. § 552(a)(6)(C)(i).

46. As of the date of this filing, and in contravention of the FOIA statute, ICE has failed to produce any records responsive to Plaintiffs' FOIA requests.

## COUNT I

### Violation of Freedom of Information Act, 5 U.S.C. § 552
### for Failure to Respond Within the Time Required

47. Plaintiffs repeat, allege, and incorporate by reference the allegations in preceding paragraphs as if fully set forth herein.

48. Plaintiffs have made valid FOIA requests -- the First FOIA Request, the Second FOIA Request, and the Final FOIA Requests -- under 5 U.S.C. § 552. Each of the requests requested timely responses consistent with statutory requirements.

49. ICE is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for and to produce records responsive to Plaintiffs' FOIA requests within the time periods prescribed by 5 U.S.C. § 552.

50. ICE has failed to timely produce responsive documents as required by 5 U.S.C. § 552, including but not limited to, 5 U.S.C. § 552(a)(6).

51. Plaintiffs have a legal right to obtain the requested records. No legal basis exists for ICE's failure to search for and disclose them.

US2008 30724702 5

## COUNT TWO

### Violation of Freedom of Information Act, 5 U.S.C. § 552
### for Failure to Conduct an Adequate Search

52.     Plaintiffs repeat, allege, and incorporate by reference the allegations in preceding paragraphs as if fully set forth herein.

53.     Plaintiffs have made valid FOIA requests -- the First FOIA Request, the Second FOIA Request, and the Final FOIA Requests -- under 5 U.S.C. § 552.  Each of the requests requested timely responses consistent with statutory requirements.

54.     ICE's failure to conduct a reasonable search for records responsive to Plaintiffs' First FOIA Request, Second FOIA Request, and Final FOIA Requests violates 5 U.S.C. §§ 552(a)(3)(A) and (a)(3)(C), as well as the regulations promulgated thereunder.

55.     Plaintiffs have a legal right to obtain the requested records.  No legal basis exists for ICE's failure to search for them.

## COUNT THREE

### Violation of Freedom of Information Act 5 U.S.C. § 552
### for Wrongful Withholding of Records

56.     Plaintiffs repeat, allege, and incorporate by reference the allegations in preceding paragraphs as if fully set forth herein.

57.     Plaintiffs have made valid FOIA requests -- the First FOIA Request, the Second FOIA Request, and the Final FOIA Requests -- under 5 U.S.C. § 552,  each of the requests requested timely responses consistent with statutory requirements.

US2008 30724702 5

58.     Defendant is improperly withholding agency records by failing to produce non-exempt records responsive to Plaintiffs' First, Second, and Final FOIA Requests and by failing to segregate and produce non-exempt records responsive to Plaintiffs' FOIA Requests.

59.     Defendant is obligated under 5 U.S.C. § 552(a)(3)(A) to promptly produce records responsive to the Plaintiffs' FOIA request.

60.     Plaintiffs have a legal right to obtain the requested records.  No legal basis exists for Defendant's failure to disclose them.

61.     Defendant's failure to disclose all responsive records violates their statutory obligations to make requested records promptly available to the public. *See* 5 U.S.C. § 552(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Katherine Evans and Amica request that judgment be entered in their favor against Defendant ICE, and that the Court:

1.  Declare that Defendant's failure to respond to Plaintiffs' FOIA requests within the statutory time limit, its failure to search for records responsive to Plaintiffs' requests, and its failure to disclose such responsive records violate FOIA;

2.  Order Defendant and any of its departments, components, other organizational structures, agents, or other persons acting by, through, for, or on behalf of ICE to conduct a prompt, reasonable search for records responsive to Plaintiffs' FOIA requests;

US2008 30724702 5

3. Order Defendant and any of its departments, components, other organizational structures, agents, or other persons acting by, through, for, or on behalf of ICE to refrain from records responsive to Plaintiffs' FOIA requests and order it to promptly produce the same;

4. Order Defendant and any of its departments, components, other organizational structures, agents, or other persons acting by, through, for, or on behalf of ICE to, in the event of a claim of exemption, to segregate and produce non-exempt records responsive to Plaintiffs' FOIA Requests;

5. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 5 U.S.C.§ 552(a)(4)(E) and 28 U.S.C. § 2412; and

6. Grant all other such relief to Plaintiffs as the Court deems just and proper.

This 28th day of April 2025.

/s/Bradley A. Roehrenbeck
Bradley A. Roehrenbeck
N.C. Bar No.: 34180
broehrenbeck@ktslaw.com
Mark D. Boynton
N.C. Bar. No.: 26066
mboynton@ktslaw.com
Susan H. Boyles
N.C. Bar No.: 20877
sboyles@ktslaw.com
Mark Henkle
N.C. Bar. No.: 49265
mhenkle@ktslaw.com
Kilpatrick Townsend & Stockton, LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Tel:    (336) 607-7300
Fax:    (336) 607-7500

US2008 30724702 5

/s/ Daniel Melo
Daniel Melo
N.C. Bar. No.: 48654
Daniel.melo@amicacenter.org
F. Evan Benz
N.C. Bar. No.: 49077
evan@amicacenter.org
Amica Center for Immigrant Rights
1025 Connecticut Avenue NW, Suite 701
Washington, D.C. 20036
Tel:    (202) 916-8180
Fax:    (202) 331-3341

US2008 30724702 5