# EXHIBIT C

**EXHIBIT C**



To Whom It May Concern:

Pursuant to Sections 552(a)(3) and 552(a)(2)(B)-(C) of the Freedom of Information Act, the Amica Center for Immigrant Rights (Amica Center) and The Duke University Immigrant Rights Clinic (Duke) (together, the Requestors) hereby request records reflecting and relating to the Department of Homeland Security's (DHS) Electronic Post Order Custody Review (ePOCR) system as described below.

DHS, via its component Immigration & Customs Enforcement, Enforcement and Removal Operations (ERO), uses ePOCR to make and review decisions about the detention of immigrants who are subject to an administratively final removal order. According to DHS, "[i]n FY 2021, ERO Removal continued the development and expanded the pilot program for the electronic Post Order Custody Review (ePOCR) module to encompass 12 ERO field offices. This undertaking provided ERO with an efficient, centralized, and uniform process that ensured timely custody decisions were conducted in accordance with applicable laws, regulations, and court orders."[1] Beyond this statement, almost no information is publicly available regarding the novel ePOCR system and how it ensures that custody decisions made within ePOCR are "in accordance with applicable laws, regulations, and court orders."[2]

Requestors submitted a prior FOIA request, reference number 2024-ICFO-49717 which the agency rejected as overly broad, despite numerous attempts by Requestors to clarify the request. While Requestors continue to dispute that the aforementioned request is overly broad or burdensome, Requestors have further refined, narrowed, separated, and clarified aspects of the request to aid the agency in searching for and producing responsive records. As noted in the Department of Justice's FOIA guidance: "The sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning of 5 U.S.C. § 552(a)(3)(A). That provision in the FOIA was intended to ensure that a FOIA request description "be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." H.R. Rep. No. 93-876, 93d Cong., 2d Sess. 6 (1974). See also S. Rep. No. 93-854, 93d Cong., 2d Sess. 10 (1974) ("[T]he identification standard should not be used to obstruct public access to agency records."); Bristol-Meyers Co. v. FTC, 424 F.2d 935, 938 (D.C. Cir.), cert. denied, 400 U.S. 824 (1970)." DoJ FOIA Update, Vol. IV, No. 3, at 5.

If the agency maintains this stance on our request, we ask the agency detail the number of records, the estimated time, and the expense of searching for records responsive to our request. *See Pinson v. United States Department of Justice*, 71 F.3d 885, 892 (D.C. Cir. 1995).

---

[1] DHS, "FY2023 Budget in Brief," p. 35, https://www.dhs.gov/sites/default/files/2022-03/22-%201835%20-%20FY%202023%20Budget%20in%20Brief%20FINAL%20with%20Cover_Remediated.pdf
[2] *Id.*

1

To greater enlighten the broader public on a novel government activity that directly impacts immigrant rights, we request the following records:

**I.     Records Requested**

Development of ePOCR:

1. All records prepared, received, transmitted, collected, and/or maintained by DHS sufficient to show the development of the ePOCR computer system.
2. All final reports, recommendations, or memoranda produced by DHS on or after January 1, 2020 relating to problems with the use of and contemplated replacement of the "Transfer Checklist" in the post order custody review process.
3. All records sufficient to show the business rules, criteria, protocols, scoring, "structured fields" or "list of values" governing or incorporated into, or planned to be incorporated into or govern, any automated review process, decision structure, or other decisional matrix of any past, present, or future version of ePOCR.
4. All records sufficient to show the use of decisions by the Board of Immigration Appeals (BIA), U.S. Courts of Appeals, and the Supreme Court within ePOCR.
5. All records sufficient to show the use of federal statutes and regulations within ePOCR.
6. All records sufficient to show the manner and frequency in which ePOCR is updated to reflect changes in the law, regulations, or court orders.
7. All records sufficient to show the contemplated and purported uses for ePOCR, including, but not limited to, any plans to add features to or expand the uses of ePOCR.
8. All records sufficient to show the use of ePOCR to facilitate removal of noncitizens from the United States.
9. All records sufficient to show any and all factors ePOCR utilizes in making determinations about a noncitizen's detention, including but not limited to flight risk, danger, or significant likelihood of removal in the reasonably foreseeable future, and the basis for how ePOCR scores, analyzes, or otherwise evaluates those factors within ePOCR's determination process.
10. All records sufficient to show any risk assessments utilized by or generated within ePOCR and the basis for how ePOCR scores, analyzes, or otherwise creates each risk assessment including business rules, criteria, protocols, scoring, structured fields or list of values used to assess risk to public safety or risk of flight.
11. All records sufficient to show the interaction of ePOCR and the Risk Classification Assessment (RCA) system, including any of the RCA components such as the special vulnerabilities, mandatory detention, risk of flight, risk to public safety, and/or the custody classification modules, scores, and risk levels.
12. All records sufficient to show consideration of the use of any alternative systems to ePOCR for the review and determination of custody decisions for immigrants subject to administratively final removal orders.
13. All records sufficient to show all databases and major information systems ePOCR may access or interface with.
14. All records sufficient to show the need or justification for the development and implementation of ePOCR.

15. All records reflecting any information released to the public or other media disclosures regarding the need for and development of ePOCR.
16. All records sufficient to show any statement of work and/or contract documents for any private/non-governmental entity that has received or will receive funds for the development of the ePOCR system.
17. All records sufficient to show the specifications provided to information technology contractors or similar parties to contracts regarding the "requirements definition," "design," and "development" of any past, present, or future version of ePOCR, or any substantially similar software or computer system intended to perform the same function as ePOCR.
18. All final policy memoranda, standard operating procedures, and/or other similar records used to establish final agency policy or guidance in effect since January 1, 2020 relating to:

   a. All decisions to continue or otherwise further development of the ePOCR, or electronic post order custody review, module.
   b. All decisions to expand access to and use of the ePOCR system by Enforcement and Removal Operations offices or employees.

Requestors seek all responsive records regardless of format, medium, or physical characteristics. In conducting the search, please understand and interpret the terms "record," "document," and "information" in their broadest sense to include any written, typed, recorded, graphic, printed, audio, or video material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, audio or video recordings, or minutes of any meetings, telephone conversations, or discussions. Our request includes any attachments to records responsive to the above requests, including e-mail attachments. No category of material should be omitted from search, collection, and production.

Please search all records regarding agency business, including files or emails in the personal custody of your officials, such as personal email accounts. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016). Notwithstanding any policies or procedures requiring officials to move such information to official systems within a predetermined time period, we exercise and specifically preserve and assert our right to records contained in those files even if the material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016).

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered DHS's prior FOIA practices unreasonable. In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable

3

to rely exclusively on custodian-driven searches. Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidentialmemorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is likely more complete than individual custodians' files. For example, a custodian may have deleted a responsive email from his or her email program, but DHS's archiving tools would capture that email under Capstone. Accordingly, we insist that DHS use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. We are available to work with you to craft appropriate search terms.

If it is your position that any portion of the requested records is exempt from disclosure, we request that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the index "must describe each document or portion thereof withheld, and for each withholding, it must discuss the consequences of disclosing the sought-after information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987). Further, you must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable, non-exempt portions of the requested records. If it is your position that a record contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *Mead Data Central*, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## II. <u>Requestor Information</u>

Requestor Katherine Evans is a law professor at Duke University School of Law, a 501(c)(3) educational institution. Requestor Evans also directs Duke Law's Immigrant Rights Clinic, which provides deportation defense services to individuals throughout North Carolina at no cost.

The clinic also provides information and education to community organizations and service providers concerning DHS policy as well as the rights and obligations of noncitizens.[3]

Amica Center is a 501(c)(3) nonprofit organization that provides legal services to noncitizens in ICE custody, including services administered through the Executive Office of Immigration Review's Office of Legal Access Programs. Originally started as a project of the Washington Lawyer's Committee for Civil Rights and Urban Affairs, Amica Center became an independent non-profit organization in 1999 under its former name, the Capital Area Immigrants' Rights (CAIR) Coalition. Amica Center consists of the Detained Adults Program, the Detained Children's Program, and the Immigration Impact Lab.

Amica Center's mission is to ensure equal justice for all immigrant adults and children at risk of detention and deportation in the D.C. region and beyond through direct legal representation, know-your-rights presentations, impact litigation, advocacy, and the enlistment and training of pro bono attorneys to defend immigrants. We are driven in our pursuit of a vision for equal justice for all immigrants at risk of detention and deportation by our understanding of the grave human costs of the American detention and deportation system.

### III.    <u>Fee Waiver Request:</u>

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), we request a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. 6 C.F.R. § 5.11(k)(1)(i). Moreover, the request is entirely and fundamentally for non-commercial purposes. 6 C.F.R. § 5.11(k)(1)(ii).

We request a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 6 C.F.R. § 5.11(k)(1)(i); *see also* 6 C.F.R. § 5.11(k)(2)(i)-(iv). There exists little information already in the public domain about the ePCOR system and its operations and thus disclosure of this information is highly likely to contribute to an increased public understanding of those activities. Understanding how ePOCR operates, including whether it complies with the immigration statutes, the federal immigration regulations, and the binding precedents of federal courts is of grave national importance. Understanding this system is also of particular importance to immigrants detained in ICE custody, their advocates, and their families and broader communities.

Requestor Katherine Evans has published the results of other public records requests.[4] She was part of an effort to understand DHS's Risk Classification Assessment (RCA) system, which

---

[3] Duke Law: Clinics and Externships, Immigrant Rights Clinic, https://law.duke.edu/immigrantrights/.

[4] *See, e.g.*, Duke Law Scholarship Repository, *Manipulating Risk: Immigration Detention Through Automation*, 24 Lewis & Clark L. Rev. 789 (2020) *available at* https://scholarship.law.duke.edu/faculty_scholarship/3994/ and *Punishing with Impunity: The Legacy of Risk Classification Assessment in Immigration Detention*, 36 Geo. Immig. L. J. 1 (2021) *available at* https://scholarship.law.duke.edu/faculty_scholarship/4115/.

produces detention and release recommendations to ICE personnel.[5] Numerous FOIAs were filed, and Requestor Evans later published the results in the Lewis & Clark Law Review and the Georgetown Immigration Law Journal.[6] This was the first time the RCA's algorithm, modifications, and outcomes were made public.[7] The Articles, RCA FOIA requests, and DHS's response can also be found in the Duke Law Scholarship Repository, an electronic repository launched in 2005 to maximize open access to the scholarly works of Duke Law faculty and to actively promote public access to legal information.[8]

As a provider of legal services to detained non-citizens, Amica Center has the necessary expertise, capacity, and intention to review, analyze, and synthesize this information and make it accessible to a broad audience of attorneys and clients in immigration proceedings. Amica Center also requests a limitation of search and review fees as "representatives of the media" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media") and 28 C.F.R. § 16.10(c)(1)(i) (search fees shall not be charged to "representatives of the news media").

Amica Center is "a representative of the news media" within the meaning of the statute and applicable regulations. *See* 5 U.S.C. § 552(a)(4)(A)(ii) (defined as "any . . . entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience,"); *Nat. Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1397 (D.C. Cir. 1989) (same); *Electronic Privacy Info. Ctr. v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) (non-profit that published information in a wide variety of sources on topics of privacy and civil liberties qualified as representative of news media for FOIA purposes).

The statutory definition does not require that the requestor be a member of the traditional media. "[A]s methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Cause of Action v. F.T.C.*, 799 F.3d 1108, 1125 (D.C. Cir. Aug. 25, 2015) (disagreeing "with the suggestion that a public interest advocacy organization cannot satisfy the statute's . . . criterion" and remanding for reconsideration). Accordingly, courts have found that non-traditional news media outlets (such as, for example, the ACLU—a nationwide nonprofit civil rights organization) can qualify as representatives of the news media for the purposes of FOIA. *See ACLU of Washington v. Dep't of Justice*, No. C09-0642RSL, 2011 WL 887731, at *10 (D. Wash. Mar. 10, 2011) (finding that the ACLU qualifies as a "representative of the news media") *recons. on other grounds*, *ACLU v. Dep't of Justice*, 2011 WL 1900140 (D. Wash. May 19, 2011).

Amica Center is a member of the news media and routinely provides written news commentary on immigration laws and policies on its website and social media platforms as well as traditional news media platforms:

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *See* Duke Law Scholarship Repository*,* https://scholarship.law.duke.edu/.

6

- Amica Center News Feed (last updated March 21, 2024), https://amicacenter.org/news-and-stories/news/
- Evan Benz, *Making Changes to U.S. Immigration Policy*, N.Y. Opinions (Jan. 19, 2024), https://www.nytimes.com/2024/01/19/opinion/immigration-policy.html;
- Daniel Melo, *Glenn Youngkin's Border Folly*, WAPO Opinions (July 17, 2023),https://www.washingtonpost.com/opinions/2023/07/17/glenn-youngkins-border-folly/

As members of the news media, we intend to use the documents and information received in response to this request to share with the public and to write related news articles about immigration enforcement efforts. Amica Center can effectively convey the information to a broad audience as Amica Center's website, which is available to the public, receives more than 10,000 monthly visitors, and information available on the website is shared and re-posted on other websites with large audiences. Amica Center also will circulate a summary of information disclosed through this request in its listserv, in which approximately 2,500 attorneys participate. Additionally, Amica Center shares information in its newsletter, which is directly distributed to 6,000 recipients. Further information on Amica Center's organization and the services Amica Center provides is available on our website at www.caircoalition.org. Amica Center has no commercial interest in the information to be obtained under this FOIA request and may make the information publicly available at no cost through our website.

Given that FOIA's fee waiver requirements are to be "liberally construed in favor of waivers for noncommercial requesters," a waiver of all fees is justified and warranted in this instance. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quotation omitted)In the event that there are fees, we would be grateful if you would inform us of the total charges in advance of fulfilling my request.

## IV.     Request for Expediting Processing

Amica Center requests Track 1 expedited treatment for this FOIA request. There is a compelling need for expedited processing, namely, an "urgency to inform the public concerning the actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e). The courts have interpreted the "compelling need" language in the statute to encompass three factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *See Protect Democracy Project, Inc. v. U.S. Department of Defense*, 263 F.Supp.3d 293, 298-99 (D.C. Cir. 2017) (citing Al-Fayed v. C.I.A., 254 F.3d 300, 310 (D.C. Cir. 2001)).

Amica Center has clients who have been subjected to prolonged immigration detention after winning relief from removal and these individuals need information about how ePOCR is structured, what policies and practices govern its use, and how it is being utilized to make immigration custody decisions under 8 C.F.R. § 241.4, 241.13, etc., in order to understand the basis for their detention and advocate for their release. Amica Center has seen numerous examples of ICE officials failing to follow internal policies and/or relying on mistaken information in conducting post-order custody reviews, thereby erroneously extending detention

of our clients. Given the noncitizen's fundamental due process interest in freedom from confinement, this need is especially significant. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In light of these concerns, we request that the agency complete expedited processing within 60 days of receipt of this request.

Pursuant to 5 U.S.C. § 552(a)(vi), we certify the statement in support of the request for expedited treatment to be true and correct to the best of our knowledge and belief.

## V.      Format of Production

Electronic versions in the native format of the requested documents are preferred. For documents that are not available in this format, please provide records electronically in a text-searchable, static image format (PDF). Please also provide any data in a workable format, such as Microsoft Excel. If terms or codes are not in the form template and/or publicly defined, please provide a glossary or other descriptive records containing definitions of acronyms, numerical codes, or terms contained in data responsive to this request.

Thank you in advance for your anticipated cooperation in this matter. We look forward to receiving your response to this request within 10 business days, as the statute requires.

Sincerely,

Katherine Evans
Clinical Professor of Law
Director, Immigrant Rights Clinic
Duke University School of Law


Evan Benz and Daniel Melo
Senior Attorneys
Immigration Impact Lab
Amica Center For Immigrant Rights

8



To Whom It May Concern:

Pursuant to Sections 552(a)(3) and 552(a)(2)(B)-(C) of the Freedom of Information Act, the Amica Center for Immigrant Rights (Amica Center) and The Duke University Immigrant Rights Clinic (Duke) (together, the Requestors) hereby request records reflecting and relating to the Department of Homeland Security's (DHS) Electronic Post Order Custody Review (ePOCR) system as described below.

DHS, via its component Immigration & Customs Enforcement, Enforcement and Removal Operations (ERO), uses ePOCR to make and review decisions about the detention of immigrants who are subject to an administratively final removal order. According to DHS, "[i]n FY 2021, ERO Removal continued the development and expanded the pilot program for the electronic Post Order Custody Review (ePOCR) module to encompass 12 ERO field offices. This undertaking provided ERO with an efficient, centralized, and uniform process that ensured timely custody decisions were conducted in accordance with applicable laws, regulations, and court orders."[1] Beyond this statement, almost no information is publicly available regarding the novel ePOCR system and how it ensures that custody decisions made within ePOCR are "in accordance with applicable laws, regulations, and court orders."[2]

Requestors submitted a prior FOIA request, reference number 2024-ICFO-49717 which the agency rejected as overly broad, despite numerous attempts by Requestors to clarify the request. While Requestors continue to dispute that the aforementioned request is overly broad or burdensome, Requestors have further refined, narrowed, separated, and clarified aspects of the request to aid the agency in searching for and producing responsive records. As noted in the Department of Justice's FOIA guidance: "The sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning of 5 U.S.C. § 552(a)(3)(A). That provision in the FOIA was intended to ensure that a FOIA request description "be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." H.R. Rep. No. 93-876, 93d Cong., 2d Sess. 6 (1974). See also S. Rep. No. 93-854, 93d Cong., 2d Sess. 10 (1974) ("[T]he identification standard should not be used to obstruct public access to agency records."); Bristol-Meyers Co. v. FTC, 424 F.2d 935, 938 (D.C. Cir.), cert. denied, 400 U.S. 824 (1970)." DoJ FOIA Update, Vol. IV, No. 3, at 5.

If the agency maintains this stance on our request, we ask the agency detail the number of records, the estimated time, and the expense of searching for records responsive to our request. *See Pinson v. United States Department of Justice*, 71 F.3d 885, 892 (D.C. Cir. 1995).

---

[1] DHS, "FY2023 Budget in Brief," p. 35, https://www.dhs.gov/sites/default/files/2022-03/22-%201835%20-%20FY%202023%20Budget%20in%20Brief%20FINAL%20with%20Cover_Remediated.pdf
[2] *Id.*

1

To greater enlighten the broader public on a novel government activity that directly impacts immigrant rights, we request the following records:

## I.     Records Requested

Communications relating to ePOCR:

Requestors request access to and copies of all communications, including but not limited to letters, memos, emails, text messages, and other electronic messages, sent or received since January 1, 2020, that contain any of the following terms or phrases:

1. "ePOCR",
2. "electronic post order custody review",
3. "post order custody review module", or
4. "post order custody review system".

Requestors seek all responsive records regardless of format, medium, or physical characteristics. In conducting the search, please understand and interpret the terms "record," "document," and "information" in their broadest sense to include any written, typed, recorded, graphic, printed, audio, or video material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, audio or video recordings, or minutes of any meetings, telephone conversations, or discussions. Our request includes any attachments to records responsive to the above requests, including e-mail attachments. No category of material should be omitted from search, collection, and production.

Please search all records regarding agency business, including files or emails in the personal custody of your officials, such as personal email accounts. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016). Notwithstanding any policies or procedures requiring officials to move such information to official systems within a predetermined time period, we exercise and specifically preserve and assert our right to records contained in those files even if the material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016).

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered DHS's prior FOIA practices unreasonable. In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches. Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-

2

[office/2011/11/28/presidentialmemorandum-managing-government-records](office/2011/11/28/presidentialmemorandum-managing-government-records); Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), [https://www.archives.gov/files/records-mgmt/m-12-18.pdf](https://www.archives.gov/files/records-mgmt/m-12-18.pdf).

Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is likely more complete than individual custodians' files. For example, a custodian may have deleted a responsive email from his or her email program, but DHS's archiving tools would capture that email under Capstone. Accordingly, we insist that DHS use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. We are available to work with you to craft appropriate search terms.

If it is your position that any portion of the requested records is exempt from disclosure, we request that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the index "must describe each document or portion thereof withheld, and for each withholding, it must discuss the consequences of disclosing the sought-after information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987). Further, you must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Id*. at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable, non-exempt portions of the requested records. If it is your position that a record contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *Mead Data Central*, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## II.     Requestor Information

Requestor Katherine Evans is a law professor at Duke University School of Law, a 501(c)(3) educational institution. Requestor Evans also directs Duke Law's Immigrant Rights Clinic, which provides deportation defense services to individuals throughout North Carolina at no cost. The clinic also provides information and education to community organizations and service providers concerning DHS policy as well as the rights and obligations of noncitizens.[3]

---

[3] Duke Law: Clinics and Externships, Immigrant Rights Clinic, [https://law.duke.edu/immigrantrights/](https://law.duke.edu/immigrantrights/).

Amica Center is a 501(c)(3) nonprofit organization that provides legal services to noncitizens in ICE custody, including services administered through the Executive Office of Immigration Review's Office of Legal Access Programs. Originally started as a project of the Washington Lawyer's Committee for Civil Rights and Urban Affairs, Amica Center became an independent non-profit organization in 1999 under its former name, the Capital Area Immigrants' Rights (CAIR) Coalition. Amica Center consists of the Detained Adults Program, the Detained Children's Program, and the Immigration Impact Lab.

Amica Center's mission is to ensure equal justice for all immigrant adults and children at risk of detention and deportation in the D.C. region and beyond through direct legal representation, know-your-rights presentations, impact litigation, advocacy, and the enlistment and training of pro bono attorneys to defend immigrants. We are driven in our pursuit of a vision for equal justice for all immigrants at risk of detention and deportation by our understanding of the grave human costs of the American detention and deportation system.

### III. Fee Waiver Request:

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), we request a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. 6 C.F.R. § 5.11(k)(1)(i). Moreover, the request is entirely and fundamentally for non-commercial purposes. 6 C.F.R. § 5.11(k)(1)(ii).

We request a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 6 C.F.R. § 5.11(k)(1)(i); *see also* 6 C.F.R. § 5.11(k)(2)(i)-(iv). There exists little information already in the public domain about the ePCOR system and its operations and thus disclosure of this information is highly likely to contribute to an increased public understanding of those activities. Understanding how ePOCR operates, including whether it complies with the immigration statutes, the federal immigration regulations, and the binding precedents of federal courts is of grave national importance. Understanding this system is also of particular importance to immigrants detained in ICE custody, their advocates, and their families and broader communities.

Requestor Katherine Evans has published the results of other public records requests.[4] She was part of an effort to understand DHS's Risk Classification Assessment (RCA) system, which produces detention and release recommendations to ICE personnel.[5] Numerous FOIAs were filed, and Requestor Evans later published the results in the Lewis & Clark Law Review and the Georgetown Immigration Law Journal.[6] This was the first time the RCA's algorithm,

---

[4] *See, e.g.*, Duke Law Scholarship Repository, *Manipulating Risk: Immigration Detention Through Automation*, 24 Lewis & Clark L. Rev. 789 (2020) *available at* https://scholarship.law.duke.edu/faculty_scholarship/3994/ and *Punishing with Impunity: The Legacy of Risk Classification Assessment in Immigration Detention*, 36 Geo. Immig. L. J. 1 (2021) *available at* https://scholarship.law.duke.edu/faculty_scholarship/4115/.

[5] *Id.*

[6] *Id.*

4

modifications, and outcomes were made public.[7] The Articles, RCA FOIA requests, and DHS's response can also be found in the Duke Law Scholarship Repository, an electronic repository launched in 2005 to maximize open access to the scholarly works of Duke Law faculty and to actively promote public access to legal information.[8]

As a provider of legal services to detained non-citizens, Amica Center has the necessary expertise, capacity, and intention to review, analyze, and synthesize this information and make it accessible to a broad audience of attorneys and clients in immigration proceedings. Amica Center also requests a limitation of search and review fees as "representatives of the media" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media") and 28 C.F.R. § 16.10(c)(1)(i) (search fees shall not be charged to "representatives of the news media").

Amica Center is "a representative of the news media" within the meaning of the statute and applicable regulations. *See* 5 U.S.C. § 552(a)(4)(A)(ii) (defined as "any . . . entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience,"); *Nat. Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1397 (D.C. Cir. 1989) (same); *Electronic Privacy Info. Ctr. v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) (non-profit that published information in a wide variety of sources on topics of privacy and civil liberties qualified as representative of news media for FOIA purposes).

The statutory definition does not require that the requestor be a member of the traditional media. "[A]s methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Cause of Action v. F.T.C.*, 799 F.3d 1108, 1125 (D.C. Cir. Aug. 25, 2015) (disagreeing "with the suggestion that a public interest advocacy organization cannot satisfy the statute's . . . criterion" and remanding for reconsideration). Accordingly, courts have found that non-traditional news media outlets (such as, for example, the ACLU—a nationwide nonprofit civil rights organization) can qualify as representatives of the news media for the purposes of FOIA. *See ACLU of Washington v. Dep't of Justice*, No. C09-0642RSL, 2011 WL 887731, at *10 (D. Wash. Mar. 10, 2011) (finding that the ACLU qualifies as a "representative of the news media") *recons. on other grounds*, *ACLU v. Dep't of Justice*, 2011 WL 1900140 (D. Wash. May 19, 2011).

Amica Center is a member of the news media and routinely provides written news commentary on immigration laws and policies on its website and social media platforms as well as traditional news media platforms:

- Amica Center News Feed (last updated March 21, 2024), https://amicacenter.org/news-and-stories/news/
- Evan Benz, *Making Changes to U.S. Immigration Policy*, N.Y. Opinions (Jan. 19, 2024), https://www.nytimes.com/2024/01/19/opinion/immigration-policy.html;

---

[7] *Id.*

[8] *See* Duke Law Scholarship Repository*,* https://scholarship.law.duke.edu/.

5

- Daniel Melo, *Glenn Youngkin's Border Folly*, WAPO Opinions (July 17, 2023),https://www.washingtonpost.com/opinions/2023/07/17/glenn-youngkins-border-folly/

As members of the news media, we intend to use the documents and information received in response to this request to share with the public and to write related news articles about immigration enforcement efforts. Amica Center can effectively convey the information to a broad audience as Amica Center's website, which is available to the public, receives more than 10,000 monthly visitors, and information available on the website is shared and re-posted on other websites with large audiences. Amica Center also will circulate a summary of information disclosed through this request in its listserv, in which approximately 2,500 attorneys participate. Additionally, Amica Center shares information in its newsletter, which is directly distributed to 6,000 recipients. Further information on Amica Center's organization and the services Amica Center provides is available on our website at www.caircoalition.org. Amica Center has no commercial interest in the information to be obtained under this FOIA request and may make the information publicly available at no cost through our website.

Given that FOIA's fee waiver requirements are to be "liberally construed in favor of waivers for noncommercial requesters," a waiver of all fees is justified and warranted in this instance. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quotation omitted)In the event that there are fees, we would be grateful if you would inform us of the total charges in advance of fulfilling my request.

### IV.    <u>Request for Expediting Processing</u>

Amica Center requests Track 1 expedited treatment for this FOIA request. There is a compelling need for expedited processing, namely, an "urgency to inform the public concerning the actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e). The courts have interpreted the "compelling need" language in the statute to encompass three factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *See Protect Democracy Project, Inc. v. U.S. Department of Defense*, 263 F.Supp.3d 293, 298-99 (D.C. Cir. 2017) (citing Al-Fayed v. C.I.A., 254 F.3d 300, 310 (D.C. Cir. 2001)).

Amica Center has clients who have been subjected to prolonged immigration detention after winning relief from removal and these individuals need information about how ePOCR is structured, what policies and practices govern its use, and how it is being utilized to make immigration custody decisions under 8 C.F.R. § 241.4, 241.13, etc., in order to understand the basis for their detention and advocate for their release. Amica Center has seen numerous examples of ICE officials failing to follow internal policies and/or relying on mistaken information in conducting post-order custody reviews, thereby erroneously extending detention of our clients. Given the noncitizen's fundamental due process interest in freedom from confinement, this need is especially significant. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In light of these concerns, we request that the agency complete expedited processing within 60 days of receipt of this request.

Pursuant to 5 U.S.C. § 552(a)(vi), we certify the statement in support of the request for expedited treatment to be true and correct to the best of our knowledge and belief.

## V.      Format of Production

Electronic versions in the native format of the requested documents are preferred. For documents that are not available in this format, please provide records electronically in a text-searchable, static image format (PDF). Please also provide any data in a workable format, such as Microsoft Excel. If terms or codes are not in the form template and/or publicly defined, please provide a glossary or other descriptive records containing definitions of acronyms, numerical codes, or terms contained in data responsive to this request.

Thank you in advance for your anticipated cooperation in this matter. We look forward to receiving your response to this request within 10 business days, as the statute requires.

Sincerely,

Katherine Evans
Clinical Professor of Law
Director, Immigrant Rights Clinic
Duke University School of Law


Evan Benz and Daniel Melo
Senior Attorneys
Immigration Impact Lab
Amica Center For Immigrant Rights

7



To Whom It May Concern:

Pursuant to Sections 552(a)(3) and 552(a)(2)(B)-(C) of the Freedom of Information Act, the Amica Center for Immigrant Rights (Amica Center) and The Duke University Immigrant Rights Clinic (Duke) (together, the Requestors) hereby request records reflecting and relating to the Department of Homeland Security's (DHS) Electronic Post Order Custody Review (ePOCR) system as described below.

DHS, via its component Immigration & Customs Enforcement, Enforcement and Removal Operations (ERO), uses ePOCR to make and review decisions about the detention of immigrants who are subject to an administratively final removal order. According to DHS, "[i]n FY 2021, ERO Removal continued the development and expanded the pilot program for the electronic Post Order Custody Review (ePOCR) module to encompass 12 ERO field offices. This undertaking provided ERO with an efficient, centralized, and uniform process that ensured timely custody decisions were conducted in accordance with applicable laws, regulations, and court orders."[1] Beyond this statement, almost no information is publicly available regarding the novel ePOCR system and how it ensures that custody decisions made within ePOCR are "in accordance with applicable laws, regulations, and court orders."[2]

Requestors submitted a prior FOIA request, reference number 2024-ICFO-49717 which the agency rejected as overly broad, despite numerous attempts by Requestors to clarify the request. While Requestors continue to dispute that the aforementioned request is overly broad or burdensome, Requestors have further refined, narrowed, separated, and clarified aspects of the request to aid the agency in searching for and producing responsive records. As noted in the Department of Justice's FOIA guidance: "The sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning of 5 U.S.C. § 552(a)(3)(A). That provision in the FOIA was intended to ensure that a FOIA request description "be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." H.R. Rep. No. 93-876, 93d Cong., 2d Sess. 6 (1974). See also S. Rep. No. 93-854, 93d Cong., 2d Sess. 10 (1974) ("[T]he identification standard should not be used to obstruct public access to agency records."); Bristol-Meyers Co. v. FTC, 424 F.2d 935, 938 (D.C. Cir.), cert. denied, 400 U.S. 824 (1970)." DoJ FOIA Update, Vol. IV, No. 3, at 5.

If the agency maintains this stance on our request, we ask the agency detail the number of records, the estimated time, and the expense of searching for records responsive to our request. *See Pinson v. United States Department of Justice*, 71 F.3d 885, 892 (D.C. Cir. 1995).

---

[1] DHS, "FY2023 Budget in Brief," p. 35, https://www.dhs.gov/sites/default/files/2022-03/22-%201835%20-%20FY%202023%20Budget%20in%20Brief%20FINAL%20with%20Cover_Remediated.pdf
[2] *Id.*

To greater enlighten the broader public on a novel government activity that directly impacts immigrant rights, we request the following records:

## I.       Records Requested

Implementation of ePOCR:

1. Any "user guide," "quick-reference guide," "handbook," and all other records sufficient to show the proper use and function of ePOCR that DHS has developed for officers, employees, or contractors using ePOCR.
2. All processing manuals, policies, procedures, guidelines, guidance, memoranda, instructions, training materials, Virtual University materials, and other similar records relating to DHS's implementation, deployment, and use of ePOCR by DHS officers, employees, or contractors.
3. All records of summaries, support requests, help desk tickets, reports, or similar records discussing or regarding errors or incidents occurring within ePOCR since implementation and use of ePOCR began.
4. All records sufficient to show any "data dictionary" that DHS has developed for ePOCR.
5. All records sufficient to show any "sitemap" for ePOCR.
6. All records sufficient to show any artificial intelligence, machine learning, or other systemic computer system learning incorporated or contemplated as part of any past, present, or future version of ePOCR.
7. All records sufficient to show the process by which automated or algorithmic custody recommendations are made within ePOCR.
8. All records sufficient to show the ePOCR system's algorithmic or automated process for making post order custody recommendations.
9. Screenshots of all pages in the ePOCR system through which DHS officers, employees, or contractors may enter data, including, but not limited to, the "Preparation Page."
10. Screenshots of all pages in the ePOCR system that displays data gathered from any other database or information repository, including, but not limited to, the "Immigration History" page.
11. All records sufficient to show user requirements necessary to use ePOCR.
12. All records sufficient to show the development of the Privacy Impact Assessment(s) ("PIA") for ePOCR.
13. All records discussing or documenting the efficiency or effectiveness of the ePOCR system since its implementation.
14. All records sufficient to show any DHS plans to share information captured by any of ePOCR's fields or features with other federal agencies, state or local governments or subdivisions thereof, or private entities outside of DHS.
15. All records sufficient to show information communicated to the general public or any other media disclosures regarding the implementation and use of ePOCR.
16. All records sufficient to show any reporting of errors from DHS to any contractor or subcontractor, regardless of whether that contractor or subcontractor is a private, non-governmental entity, regarding the functioning of ePOCR.
17. All records reflecting any other FOIA request regarding ePOCR.

2

Requestors seek all responsive records regardless of format, medium, or physical characteristics. In conducting the search, please understand and interpret the terms "record," "document," and "information" in their broadest sense to include any written, typed, recorded, graphic, printed, audio, or video material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, audio or video recordings, or minutes of any meetings, telephone conversations, or discussions. Our request includes any attachments to records responsive to the above requests, including e-mail attachments. No category of material should be omitted from search, collection, and production.

Please search all records regarding agency business, including files or emails in the personal custody of your officials, such as personal email accounts. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016). Notwithstanding any policies or procedures requiring officials to move such information to official systems within a predetermined time period, we exercise and specifically preserve and assert our right to records contained in those files even if the material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016).

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered DHS's prior FOIA practices unreasonable. In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches. Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), [https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidentialmemorandum-managing-government-records](https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidentialmemorandum-managing-government-records); Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), [https://www.archives.gov/files/records-mgmt/m-12-18.pdf](https://www.archives.gov/files/records-mgmt/m-12-18.pdf).

Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is likely more complete than individual custodians' files. For example, a custodian may have deleted a responsive email from his or her email program, but DHS's archiving tools would capture that email under Capstone. Accordingly, we insist that DHS use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. We are available to work with you to craft appropriate search terms.

If it is your position that any portion of the requested records is exempt from disclosure, we request that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The index must describe each

document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the index "must describe each document or portion thereof withheld, and for each withholding, it must discuss the consequences of disclosing the sought-after information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987). Further, you must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Id*. at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable, non-exempt portions of the requested records. If it is your position that a record contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *Mead Data Central*, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## II.    <u>Requestor Information</u>

Requestor Katherine Evans is a law professor at Duke University School of Law, a 501(c)(3) educational institution. Requestor Evans also directs Duke Law's Immigrant Rights Clinic, which provides deportation defense services to individuals throughout North Carolina at no cost. The clinic also provides information and education to community organizations and service providers concerning DHS policy as well as the rights and obligations of noncitizens.[3]

Amica Center is a 501(c)(3) nonprofit organization that provides legal services to noncitizens in ICE custody, including services administered through the Executive Office of Immigration Review's Office of Legal Access Programs. Originally started as a project of the Washington Lawyer's Committee for Civil Rights and Urban Affairs, Amica Center became an independent non-profit organization in 1999 under its former name, the Capital Area Immigrants' Rights (CAIR) Coalition. Amica Center consists of the Detained Adults Program, the Detained Children's Program, and the Immigration Impact Lab.

Amica Center's mission is to ensure equal justice for all immigrant adults and children at risk of detention and deportation in the D.C. region and beyond through direct legal representation, know-your-rights presentations, impact litigation, advocacy, and the enlistment and training of pro bono attorneys to defend immigrants. We are driven in our pursuit of a vision for equal justice for all immigrants at risk of detention and deportation by our understanding of the grave human costs of the American detention and deportation system.

---

[3] Duke Law: Clinics and Externships, Immigrant Rights Clinic, https://law.duke.edu/immigrantrights/.

### III. **<u>Fee Waiver Request:</u>**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), we request a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. 6 C.F.R. § 5.11(k)(1)(i). Moreover, the request is entirely and fundamentally for non-commercial purposes. 6 C.F.R. § 5.11(k)(1)(ii).

We request a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 6 C.F.R. § 5.11(k)(1)(i); *see also* 6 C.F.R. § 5.11(k)(2)(i)-(iv). There exists little information already in the public domain about the ePCOR system and its operations and thus disclosure of this information is highly likely to contribute to an increased public understanding of those activities. Understanding how ePOCR operates, including whether it complies with the immigration statutes, the federal immigration regulations, and the binding precedents of federal courts is of grave national importance. Understanding this system is also of particular importance to immigrants detained in ICE custody, their advocates, and their families and broader communities.

Requestor Katherine Evans has published the results of other public records requests.[4] She was part of an effort to understand DHS's Risk Classification Assessment (RCA) system, which produces detention and release recommendations to ICE personnel.[5] Numerous FOIAs were filed, and Requestor Evans later published the results in the Lewis & Clark Law Review and the Georgetown Immigration Law Journal.[6] This was the first time the RCA's algorithm, modifications, and outcomes were made public.[7] The Articles, RCA FOIA requests, and DHS's response can also be found in the Duke Law Scholarship Repository, an electronic repository launched in 2005 to maximize open access to the scholarly works of Duke Law faculty and to actively promote public access to legal information.[8]

As a provider of legal services to detained non-citizens, Amica Center has the necessary expertise, capacity, and intention to review, analyze, and synthesize this information and make it accessible to a broad audience of attorneys and clients in immigration proceedings. Amica Center also requests a limitation of search and review fees as "representatives of the media" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media") and 28 C.F.R. § 16.10(c)(1)(i) (search fees shall not be charged to "representatives of the news media").

---

[4] *See, e.g.*, Duke Law Scholarship Repository, *Manipulating Risk: Immigration Detention Through Automation*, 24 Lewis & Clark L. Rev. 789 (2020) *available at* https://scholarship.law.duke.edu/faculty_scholarship/3994/ and *Punishing with Impunity: The Legacy of Risk Classification Assessment in Immigration Detention*, 36 Geo. Immig. L. J. 1 (2021) *available at* https://scholarship.law.duke.edu/faculty_scholarship/4115/.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *See* Duke Law Scholarship Repository, https://scholarship.law.duke.edu/.

Amica Center is "a representative of the news media" within the meaning of the statute and applicable regulations. *See* 5 U.S.C. § 552(a)(4)(A)(ii) (defined as "any . . . entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience,"); *Nat. Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1397 (D.C. Cir. 1989) (same); *Electronic Privacy Info. Ctr. v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) (non-profit that published information in a wide variety of sources on topics of privacy and civil liberties qualified as representative of news media for FOIA purposes).

The statutory definition does not require that the requestor be a member of the traditional media. "[A]s methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Cause of Action v. F.T.C.*, 799 F.3d 1108, 1125 (D.C. Cir. Aug. 25, 2015) (disagreeing "with the suggestion that a public interest advocacy organization cannot satisfy the statute's . . . criterion" and remanding for reconsideration). Accordingly, courts have found that non-traditional news media outlets (such as, for example, the ACLU—a nationwide nonprofit civil rights organization) can qualify as representatives of the news media for the purposes of FOIA. *See ACLU of Washington v. Dep't of Justice*, No. C09-0642RSL, 2011 WL 887731, at *10 (D. Wash. Mar. 10, 2011) (finding that the ACLU qualifies as a "representative of the news media") *recons. on other grounds*, *ACLU v. Dep't of Justice*, 2011 WL 1900140 (D. Wash. May 19, 2011).

Amica Center is a member of the news media and routinely provides written news commentary on immigration laws and policies on its website and social media platforms as well as traditional news media platforms:

- Amica Center News Feed (last updated March 21, 2024), https://amicacenter.org/news-and-stories/news/
- Evan Benz, *Making Changes to U.S. Immigration Policy*, N.Y. Opinions (Jan. 19, 2024), https://www.nytimes.com/2024/01/19/opinion/immigration-policy.html;
- Daniel Melo, *Glenn Youngkin's Border Folly*, WAPO Opinions (July 17, 2023),https://www.washingtonpost.com/opinions/2023/07/17/glenn-youngkins-border-folly/

As members of the news media, we intend to use the documents and information received in response to this request to share with the public and to write related news articles about immigration enforcement efforts. Amica Center can effectively convey the information to a broad audience as Amica Center's website, which is available to the public, receives more than 10,000 monthly visitors, and information available on the website is shared and re-posted on other websites with large audiences. Amica Center also will circulate a summary of information disclosed through this request in its listserv, in which approximately 2,500 attorneys participate. Additionally, Amica Center shares information in its newsletter, which is directly distributed to 6,000 recipients. Further information on Amica Center's organization and the services Amica Center provides is available on our website at www.caircoalition.org. Amica Center has no commercial interest in the information to be obtained under this FOIA request and may make the information publicly available at no cost through our website.

Given that FOIA's fee waiver requirements are to be "liberally construed in favor of waivers for noncommercial requesters," a waiver of all fees is justified and warranted in this instance. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quotation omitted)In the event that there are fees, we would be grateful if you would inform us of the total charges in advance of fulfilling my request.

## IV.     Request for Expediting Processing

Amica Center requests Track 1 expedited treatment for this FOIA request. There is a compelling need for expedited processing, namely, an "urgency to inform the public concerning the actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(e). The courts have interpreted the "compelling need" language in the statute to encompass three factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *See Protect Democracy Project, Inc. v. U.S. Department of Defense*, 263 F.Supp.3d 293, 298-99 (D.C. Cir. 2017) (citing Al-Fayed v. C.I.A., 254 F.3d 300, 310 (D.C. Cir. 2001)).

Amica Center has clients who have been subjected to prolonged immigration detention after winning relief from removal and these individuals need information about how ePOCR is structured, what policies and practices govern its use, and how it is being utilized to make immigration custody decisions under 8 C.F.R. § 241.4, 241.13, etc., in order to understand the basis for their detention and advocate for their release. Amica Center has seen numerous examples of ICE officials failing to follow internal policies and/or relying on mistaken information in conducting post-order custody reviews, thereby erroneously extending detention of our clients. Given the noncitizen's fundamental due process interest in freedom from confinement, this need is especially significant. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In light of these concerns, we request that the agency complete expedited processing within 60 days of receipt of this request.

Pursuant to 5 U.S.C. § 552(a)(vi), we certify the statement in support of the request for expedited treatment to be true and correct to the best of our knowledge and belief.

## V.     Format of Production

Electronic versions in the native format of the requested documents are preferred. For documents that are not available in this format, please provide records electronically in a text-searchable, static image format (PDF). Please also provide any data in a workable format, such as Microsoft Excel. If terms or codes are not in the form template and/or publicly defined, please provide a glossary or other descriptive records containing definitions of acronyms, numerical codes, or terms contained in data responsive to this request.

Thank you in advance for your anticipated cooperation in this matter. We look forward to receiving your response to this request within 10 business days, as the statute requires.

Sincerely,

Katherine Evans
Clinical Professor of Law
Director, Immigrant Rights Clinic
Duke University School of Law


Evan Benz and Daniel Melo
Senior Attorneys
Immigration Impact Lab
Amica Center For Immigrant Rights

8